AB:PP

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
– – – – – – – – – – – – – – – – – – – – – – X

| | |
|---|---|
| IN THE MATTER OF AN APPLICATION FOR A SEARCH WARRANT FOR: | APPLICATION FOR A SEARCH WARRANT FOR AN ELECTRONIC DEVICE |
| THE ITEM KNOWN AND DESCRIBED AS: ONE SAMSUNG GALAXY J7 PRIME (Model SM-J727T1) CELL PHONE IMEI: 355620080889708 | Case No. 19-M-835 |

– – – – – – – – – – – – – – – – – – – – – – X

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR
A WARRANT TO SEARCH AND SEIZE**

I, Brian S. Mitchell, being first duly sworn, deposes and states as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a search warrant authorizing the examination of property—

an electronic device—which is currently in law enforcement possession, and the extraction

from that property of electronically stored information described in Attachment B.

2.     I have been a Special Agent with the Federal Bureau of Investigation ("FBI")

since December 2017 and I am currently assigned to the FBI's New York Field Office.

Since September 2018, I have been assigned to a Crimes Against Children squad and have

investigated violations of criminal law relating to the sexual exploitation of children.  I have

gained expertise in this area through classroom training and daily work conducting these

types of investigations.  As a result of my training and experience, I am familiar with the

techniques and methods used by individuals involved in criminal activity to conceal their

activities from detection by law enforcement authorities.  As part of my responsibilities, I

have been involved in the investigation of numerous child pornography ("CP") cases and

have reviewed thousands of photographs depicting minors (less than eighteen years of age)

being sexually exploited by adults.  Through my experience in these investigations, I have

become familiar with methods of determining whether a child is a minor.

       3.     I have personally participated in the investigation of the offenses discussed

below.  I am familiar with the facts and circumstances of this investigation from: my own

personal participation in the investigation, my review of documents, my training and

experience, and discussions I have had with other law enforcement personnel concerning the

creation, distribution, and proliferation of CP.  Additionally, statements attributable to

individuals herein are set forth in sum and substance and in part.

       4.     The FBI is currently investigating the possession, access with intent to view,

transportation, receipt, distribution, reproduction of sexually explicit material relating to

children, in violation of Title 18, United States Code, Sections 2252 and 2252A.

**<u>IDENTIFICATION OF THE DEVICES TO BE EXAMINED</u>**

       5.     The property to be searched is ONE SAMSUNG GALAXY J7 PRIME,

MODEL: SM-J727T1 / IMEI: 355620080889708 seized during the course of a search of

NICHOLAS SUAREZ's residence (the "SUBJECT DEVICE").

3

6.      The applied-for warrant would authorize the forensic examination of the SUBJECT DEVICE for the purpose of identifying electronically stored data particularly described in Attachment B.

**PROBABLE CAUSE**

7.      SUAREZ pleaded guilty on or about March 29, 2012, to one count of Receipt of Child Pornography and was sentenced to five years in prison. [1]  SUAREZ was released on December 31, 2018 and is currently on supervised release.  On May 13, 2019, officers with the United States Probation Department searched NICHOLAS SUAREZ'S residence after SUAREZ admitted, during the course of his supervised release, to using a laptop computer to view images and videos of child pornography.  SUAREZ was accessing his GMAIL account via the SUBJECT DEVICE which was not authorized under his conditions of supervision. Officers located and seized the SUBJECT DEVICE incident to the search of SUAREZ's residence.

8.      The SUBJECT DEVICE was searched on or about May 13, 2019, by a Probation Officer employed by the United States Probation Department.  During the course of the search of the SUBJECT DEVICE, the probation officer discovered multiple files of child pornography.  A majority of the images identify pre-teen females, approximately 8 – 12

---

[1]      Because this affidavit is submitted for the purpose of establishing probable cause for a search warrant, I have not set forth each and every fact learned during the course of the investigation.

4

years of age, engaging in various sexual activities.  During an interview with SUAREZ by a

Probation Officer, SUAREZ admitted to accessing child pornography on the SUBJECT

DEVICE.

      9.     The SUBJECT DEVICE was in the lawful possession of the United States

Probation Department.  The SUBJET DEVICE came into the possession of the United States

Probation Department because it was seized by them during the course of the search of

SUAREZ's residence in May 2019.  Since the time of its seizure, the SUBJECT DEVICE

has been transferred to the possession of the FBI so that the FBI may conduct further forensic

examinations of the device in support of potential federal charges.  The SUBJECT DEVICE

is located in the Eastern District of New York.

**TECHNICAL TERMS**

      10.    Based on my training and experience, I use the following technical terms to

convey the following meanings:

      a.   "Chat" refers to any kind of communication over the Internet that offers a real-

         time transmission of text messages from sender to receiver.  Chat messages are

         generally short in order to enable other participants to respond quickly and in a

         format that resembles an oral conversation.  This feature distinguishes chatting

         from other text-based online communications such as Internet forums and

         email.

b.  "Child Pornography," as used herein, is defined in 18 U.S.C. § 2256(8) as any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

c.  "Computer," as used herein, is defined pursuant to 18 U.S.C. § 1030(e)(1) as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."

d.  "Computer Server" or "Server," as used herein, is a computer that is attached to a dedicated network and serves many users.  A web server, for example, is a computer which hosts the data associated with a website.  That web server receives requests from a user and delivers information from the server to the user's computer via the Internet.  A domain name system ("DNS") server, in essence, is a computer on the Internet that routes communications when a user

types a domain name, such as www.cnn.com, into his or her web browser. Essentially, the domain name must be translated into an Internet Protocol ("IP") address so the computer hosting the web site may be located, and the DNS server provides this function.

e. "Computer hardware," as used herein, consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

f. "Computer software," as used herein, is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic, or other

digital form.  It commonly includes programs to run operating systems, applications, and utilities.

g.   "Computer-related documentation," as used herein, consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, computer software, or other related items.

h.   "Computer passwords, pass-phrases and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data.  Data security devices may consist of hardware, software, or other programming code.  A password or pass-phrase (a string of alpha-numeric characters) usually operates as a sort of digital key to "unlock" particular data security devices.  Data security hardware may include encryption devices, chips, and circuit boards.  Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched.  Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

8

i.   "Hyperlink" refers to an item on a web page which, when selected, transfers
     the user directly to another location in a hypertext document or to some other
     web page.

j.   The "Internet" is a global network of computers and other electronic devices
     that communicate with each other.  Due to the structure of the Internet,
     connections between devices on the Internet often cross state and international
     borders, even when the devices communicating with each other are in the
     same state.

k.   "Internet Service Providers" ("ISPs"), as used herein, are commercial
     organizations that are in business to provide individuals and businesses access
     to the Internet.  ISPs provide a range of functions for their customers including
     access to the Internet, web hosting, e-mail, remote storage, and co-location of
     computers and other communications equipment.  ISPs can offer a range of
     options in providing access to the Internet including telephone based dial-up,
     broadband based access via digital subscriber line ("DSL") or cable television,
     dedicated circuits, or satellite based subscription.  ISPs typically charge a fee
     based upon the type of connection and volume of data, called bandwidth,
     which the connection supports.  Many ISPs assign each subscriber an account
     name – a user name or screen name, an "e-mail address," an e-mail mailbox,

and a personal password selected by the subscriber.  By using a computer equipped with a modem, the subscriber can establish communication with an Internet Service Provider ("ISP") over a telephone line, through a cable system or via satellite, and can access the Internet by using his or her account name and personal password.

l.   "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet.  IP addresses can be "dynamic," meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet.  IP addresses might also be "static," if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.  IP addresses are also used by computer servers, including web servers, to communicate with other computers.

m.   "Minor" means any person under the age of eighteen years.  See 18 U.S.C. § 2256(1).

n.   The terms "records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form

(including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks ("DVDs"), Personal Digital Assistants ("PDAs"), Multi Media Cards ("MMCs"), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

o.   "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.  See 18 U.S.C. § 2256(2).

p.   "URL" is an abbreviation for Uniform Resource Locator and is another name for a web address.   URLs are made of letters, numbers, and other symbols in a standard form.   People use them on computers by clicking a pre-prepared link or typing or copying and pasting one into a web browser to make the computer

fetch and show some specific resource (usually a web page) from another computer (web server) on the Internet.

q. "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. See 18 U.S.C. § 2256(5).

r. "Website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language ("HTML") and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol ("HTTP");

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

11. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools. Furthermore, photographs can be stored on electronic devices for many years. There is probable cause to believe that things that were once stored on the SUBJECT DEVICE may still be stored there, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they

have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, the computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because

special software is typically required for that task.  However, it is technically possible to delete this information.

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

12.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the SUBJECT DEVICE because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).  Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals, the attachment

of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

15

e.  Further, in finding evidence of how a device was used, the purpose of its use,
who used it, and when, sometimes it is necessary to establish that a particular
thing is not present on a storage medium.

f.  I know that when an individual uses an electronic device to produce child
pornography, the individual's electronic device will generally serve both as an
instrumentality for committing the crime, and also as a storage medium for
evidence of the crime.  The electronic device is an instrumentality of the crime
because it is used as a means of committing the criminal offense.  The
electronic device is also likely to be a storage medium for evidence of crime.
From my training and experience, I believe that an electronic device used to
commit a crime of this type may contain: data that is evidence of how the
electronic device was used; data that was sent or received; and other records
that indicate the nature of the offense.

13.  *Nature of examination.*  Based on the foregoing, and consistent with Rule
41(e)(2)(B), the warrant I am applying for would permit the examination of the device
consistent with the warrant.  The examination may require authorities to employ techniques,
including but not limited to computer-assisted scans of the entire medium, that might expose
many parts of the device to human inspection in order to determine whether it is evidence
described by the warrant.

14.     *Manner of execution.*  Because this warrant seeks only permission to examine

a device already in law enforcement's possession, the execution of this warrant does not

involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable

cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

15.     I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of the SUBJECT DEVICE described in Attachment A to seek

the items described in Attachment B.


_____

Brian S. Mitchell
Special Agent
Federal Bureau of Investigation

Sworn to before me this
18th day of September, 2019


_____
THE HONORABLE STEVEN L. TISCIONE
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

**ATTACHMENT A**
<u>Property to Be Searched</u>

The property to be searched is: ONE SAMSUNG GALAXY J7 PRIME (Model SM-J727T1) / IMEI: 35562008088970/8. The SUBJECT DEVICE was seized from NICHOLAS SUAREZ on May 13, 2019, and is currently in the custody of the Federal Bureau of Investigation after it was seized during the course of a search of SUAREZ's residence. The SUBJECT DEVICE is currently located within the Eastern District of New York. This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**
<u>Property to be Seized</u>

ITEMS TO BE SEIZED FROM THE SUBJECT DEVICE, all of which constitute evidence or instrumentalities of violations of Title 18, United States Code Sections 2251, 2252 and 2252A, from January 1, 2019 through the present:

1.   Images of child pornography and files containing images of child pornography and records, images, information or correspondence pertaining to the possession, access with intent to view, receipt and distribution of sexually explicit material relating to children, in violation of Title 18, United States Code, Sections 2252 and 2252A, in any form wherever they may be stored or found;

2.   Motion pictures, films, videos, and other recordings of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256; and

3.   Records, information or correspondence pertaining to the possession, access with intent to view, transportation, receipt, distribution and reproduction of sexually explicit material relating to children, as defined in 18 U.S.C. § 2256, including, but not limited to:

   a.   Correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, including by United States mail or by computer, of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256; and

   b.   books, ledgers, and records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by United States mail or by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

2

4.    Billing and payment records, including records from credit card companies, PayPal and other electronic payment services, reflecting access to websites pertaining to child pornography.

5.    Computer-related documentation, meaning any written, recorded, printed, or electronically stored material that explains or illustrates the configuration or use of any seized computer hardware, software, or related items.

6.    Address books, mailing lists, supplier lists, mailing address labels and any and all documents and records pertaining to the preparation, purchase and acquisition of names or lists of names to be used in connection with the purchase, sale, trade or transmission of any visual depiction of minors engaged in sexually explicit conduct.

7.    Address books, names, lists of names and addresses of individuals believed to be minors.

8.    Diaries, notes and other records reflecting personal contact and other activities with individuals believed to be minors.

9.    Materials and photographs depicting sexual conduct between adults and minors or used in sexual conduct between adults and minors.

10.   Any and all records, documents, invoices and materials that concern any Internet accounts used to possess, receive or distribute child pornography.

11.   Evidence of who used, owned, or controlled the SUBJECT DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence.  User attribution information (i.e. files and other data such as chats or e-mails) relevant to the trading of child pornography.  Such information tends to show the identity of the person using the computer near the time of the criminal activity;

3

12.   Evidence of software that would allow others to control the computer, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

13.   Evidence of the lack of such malicious software;

14.   Evidence of the attachment to the computer of other storage devices or similar containers for electronic evidence;

15.   Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the computer;

16.   Evidence of the times the SUBJECT DEVICE was used;

17.   Passwords, encryption keys, and other access devices that may be necessary to access the SUBJECT DEVICE;

18.   Contextual information necessary to understand the evidence described in this attachment.

19.   Records and things evidencing the use of any IP address, including:

   a.   records of Internet Protocol addresses used;

   b.   records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

all of which constitute evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2251, 2252 and 2252A.